IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMANDA GAVITT,                              3:20-cv-01331-BR

        Plaintiff,                      OPINION AND ORDER

v.

T-MOBILE USA, INC.; SAVANNA
FERNANDEZ; and JENNIFER LAMB,

        Defendants.


**RICHARD B. MYERS**
Bennett Hartman, LLP
210 S.W. Morrison Street
Suite 500
Portland, OR 97204-3149
(503) 227-4600

        Attorneys for Plaintiff

**CODY M. WESTON**
**EDWARD CHOI**
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
(503) 727-2000

        Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Senior Judge.**

This matter comes before the Court on Plaintiff Amanda Gavitt's Motion (#7) to Remand and the Motion (#5) to Dismiss of Defendants Savannah Fernandez and Jennifer Lamb.  The Court concludes the record is sufficiently developed such that oral argument would not be helpful to resolve these Motions.  For the reasons that follow, the Court **DENIES** Plaintiff's Motion to Remand and the Motion to Dismiss of Defendants Fernandez and Lamb.

<u>**BACKGROUND**</u>

The following facts are taken from Plaintiff's Complaint and the parties' materials related to Plaintiff's Motion to Remand and the Motion to Dismiss of Defendants Fernandez and Lamb.

In May 2016 Defendant T-Mobile USA, Inc., hired Plaintiff as a Mobile Expert.

On December 23, 2018, "Plaintiff took a protected leave of absence from her employment to seek and receive mental health treatment."  Compl. at ¶ 11.  On April 8, 2019, Plaintiff returned to work.  Plaintiff alleges T-Mobile subjected her to "differential treatment in the daily conditions of her employment" after she returned from her leave of absence.  Specifically, Plaintiff alleges T-Mobile ignored or denied her requests for paid time off (PTO), did not allow her "to work for

2 - OPINION AND ORDER

commission for two weeks," and failed to compensate her at a higher rate of pay when it scheduled her to work during rest periods.  Compl. at ¶¶ 13-15.

On May 14, 2019, Plaintiff's counsel sent T-Mobile an email in which counsel "verifi[ed] . . . Plaintiff is a victim of domestic violence, harassment, sexual assault, or stalking as defined by ORS 659A.270, and request[ed] reinstatement of [Plaintiff's] hours after returning from protected leave pursuant to ORS 659A.272."  Compl. at ¶ 16.

On June 9, 2019, Defendant Fernandez issued Plaintiff a written reprimand.  The cause for the reprimand is not described in the pleadings

On July 20, 2019, T-Mobile hired a new employee to work as a Mobile Expert at the same T-Mobile store where Plaintiff works. The new employee "has been scheduled to work more hours than Plaintiff."  Compl. at ¶ 18.

In January 2020 T-Mobile did not pay Plaintiff a "promised end-of-year bonus."  Compl. at ¶ 19.

On February 7, 2020, "Plaintiff requested disability accommodation for an aggravation or worsening of her left knee impairment."  Compl. at ¶ 20.

On February 20, 2020, Defendant Lamb, an Accommodation Manager with T-Mobile, denied Plaintiff's request for accommodation on the ground that Plaintiff's left-knee impairment

3 - OPINION AND ORDER

was "short term and transitory . . . which does not rise to the level of a disability under the ADA." Compl. at ¶ 21.

On April 3, 2020, Plaintiff's counsel "gave written notice to T-Mobile of Plaintiff's wage claim and provided facts sufficient for T-Mobile to pay Plaintiff all unpaid wages." Compl. at ¶ 23. As of August 7, 2020, Defendant T-Mobile had not paid Plaintiff all of the wages owed to her. Plaintiff remains employed by Defendant T-Mobile, but she is unable to work "because T-Mobile denied her request for accommodation." Compl. at ¶ 22.

On June 24, 2020, Plaintiff filed a Complaint in Multnomah County Circuit Court against Defendants T-Mobile, Fernandez, and Lamb alleging nine claims:  (1) failure to pay all wages when due in violation of Oregon Revised Statutes § 652.120 against T-Mobile; (2) sex discrimination in violation of Oregon Revised Statutes § 569A.030(1)(b) against T-Mobile; (3) discrimination because of Plaintiff's opposition to an unlawful employment practice in violation of Oregon Revised Statutes § 659A.030(1)(f) against all Defendants; (4) aiding and abetting an unlawful employment practice in violation of Oregon Revised Statutes § 659A.030(1)(g) against Fernandez and Lamb; (5) discrimination "because of accommodation request" in violation of Oregon Revised Statutes § 659A.109 against T-Mobile; (6) disability discrimination in violation of Oregon Revised Statutes § 659A.112

against T-Mobile; (7) discrimination "because of [Plaintiff's] protected complaint" in violation of Oregon Revised Statutes § 659A.199 against T-Mobile; (8) discrimination "because of protected leave" in violation of Oregon Revised Statutes § 659A.277 against T-Mobile; and (9) discrimination "because of victim status" in violation of Oregon Revised Statutes § 659A.290(2)(b) against T-Mobile.  Plaintiff seeks compensatory damages of $50,000, back pay in the amount of $10,000, $405 in unpaid wages, attorneys' fees, and post-judgment interest.

On August 7, 2020, Defendants timely removed the matter to this Court on the basis of diversity jurisdiction.  In their Notice of Removal Defendants note Plaintiff and Defendants are citizens of different states and assert the amount in controversy exceeds $75,000.  Specifically, Defendants state Plaintiff seeks economic damages of $10,405; compensatory damages of $50,000; and attorneys' fees, which "will more than likely exceed $15,000 in this matter."  Notice of Removal at ¶ 5.

On August 14, 2020, Defendants Fernandez and Lamb filed a Motion to Dismiss in which they seek an order dismissing Plaintiff's Fourth Claim against them for "aiding and abetting an unlawful employment practice" in violation of Oregon Revised Statutes § 659A.030(1)(g).

On September 8, 2020, Plaintiff filed a Motion to Remand in which Plaintiff seeks an order remanding this matter to state

court on the ground that Defendants have not established this
Court has jurisdiction because the amount in controversy does not
exceed $75,000.

The Court took the Motions under advisement on October 6,
2020.

## STANDARDS

### I.    Motion to Remand

28 U.S.C. § 1446(a) provides in pertinent part:  "A
defendant or defendants desiring to remove any civil action
. . . from a State court shall file in the district court of the
United States for the district and division within which such
action is pending a notice of removal."

A motion to remand is the proper procedure for challenging
removal.  *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974 (9th
Cir. 2007).  "Removal and subject matter jurisdiction statutes
are strictly construed, and a defendant seeking removal has the
burden to establish that removal is proper and any doubt is
resolved against removability."  *Hawaii ex rel. Louie v. HSBC
Bank Nevada, N.A.*, 761 F.3d 1027, 1034 (9th Cir. 2014)(quotation
omitted).

28 U.S.C. § 1441(a) is strictly construed against removal
jurisdiction, and federal jurisdiction must be rejected "if there
is any doubt as to the right of removal."  *Geographic*

6 - OPINION AND ORDER

*Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d
1102, 1106-07 (9th Cir. 2010)(citation omitted).  "This gives
rise to a strong presumption against removal jurisdiction [which]
means that the defendant always has the burden of establishing
that removal is proper," and the court "strictly construe[s] the
removal statute against removal jurisdiction."  *Id*.

## II.  Motion to Dismiss

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face."  [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955
> [(2007)].  A claim has facial plausibility when
> the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that
> the defendant is liable for the misconduct
> alleged.  *Id.* at 556. . . .  The plausibility
> standard is not akin to a "probability
> requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.
> *Ibid*.  Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility
> and plausibility of 'entitlement to relief.'"  *Id*.
> at 557, 127 S. Ct. 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell
Atlantic*, 550 U.S. at 555-56.  The court must accept as true the
allegations in the complaint and construe them in favor of the
plaintiff.  *Novak v. U.S.*, 795 F.3d 1012, 1017 (9th Cir. 2015).

"In ruling on a 12(b)(6) motion, a court may generally
consider only allegations contained in the pleadings, exhibits
attached to the complaint, and matters properly subject to
judicial notice."  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir.

7 - OPINION AND ORDER

2012)(citation omitted).  A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citation omitted).

## PLAINTIFF'S MOTION (#7) TO REMAND

As noted, Plaintiff moves to remand this matter on the ground that Defendants have not established the amount in controversy exceeds $75,000, and, therefore, this Court does not have jurisdiction.  Defendants assert they have sufficiently established the amount in controversy exceeds $75,000.

### I.   Standards

A defendant may remove an action to federal court only if the district court has original jurisdiction over the matter. 28 U.S.C. § 1441(a).  "Removal statutes are to be 'strictly construed' against removal jurisdiction." *Nevada v. Bank of America Corp.*, 672 F.3d 661, 667 (9th Cir. 2012)(quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)).  The party asserting federal jurisdiction bears the burden of overcoming the presumption against federal jurisdiction. *Kokkonen,* 511 U.S. at 377.  Federal courts must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

An amount in controversy exceeding $75,000 is a prerequisite for diversity jurisdiction.  28 U.S.C. § 1332(a).  "'[F]ederal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by . . . suing for less than the jurisdictional amount.'"  *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1038 (N.D. Cal. 2014)(quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)).  Thus, when "it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003).

## II.  Parties' Arguments

In her Complaint Plaintiff sought damages of unpaid wages in the amount of $405 pursuant to Oregon Revised Statutes § 652.120; back pay in the amount of $10,000 pursuant to Oregon Revised Statutes § 659A.885; and compensatory damages in the amount of $50,000 pursuant to Oregon Revised Statutes § 659A.885.  In their Notice of Removal Defendants concede Plaintiff's Complaint seeks only $60,405 in damages, which is less than the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a).  Defendants, however, note the Ninth Circuit held in *Fritsch v. Swift Transportation Company of Arizona, LLC*, that courts "must include

future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." 899 F.3d 785, 794 (9th Cir. 2018).  Defendants assert Plaintiff's attorneys' fees in this matter are likely to exceed $14,595 in light of the number and variety of claims asserted by Plaintiff.

In her Motion to Remand Plaintiff clarified she seeks only $50,405 in damages.  Specifically, Plaintiff explained although she requested back pay of $10,000 in addition to compensatory damages of $50,000 in the prayer in her Complaint, it was a clerical error and "the text of the complaint makes clear that plaintiff intended back pay to be redundant to economic damages." Pl.'s Mot. to Remand at 5.  Plaintiff asserts it is unlikely that she will incur $24,595 in attorneys' fees in this matter because "this case has significantly less complicated facts than most employment cases," and it is likely to settle.

Defendants, however, assert in their Response to Plaintiff's Motion to Remand that Plaintiff is likely to incur at least $24,595 in attorneys' fees because of the number and diversity of her claims.

**III. Analysis**

As noted, in *Fritsch* the Ninth Circuit held "the amount in controversy is not limited to damages incurred prior to removal . . . but rather is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on

that complaint if the plaintiff is victorious." 899 F.3d at 791
(quotation omitted). "A removing defendant [must] prove that the
amount in controversy (including attorneys' fees) exceeds the
jurisdictional threshold by a preponderance of the evidence . . .
with summary-judgment-type evidence." *Id.* (citing *Chavez v.
JPMorgan Chase*, 888 F.3d 413, 416 (9th Cir. 2005), and *Corral v.
Select Portfolio Servicing, Inc.*, 878 F.3d 770, 774 (9th Cir.
2017)). Thus, "[a] district court may reject the defendant's
attempts to include future attorneys' fees in the amount in
controversy if the defendant fails to satisfy this burden of
proof."

The 2017 Oregon State Bar Economic Survey lists $300 as the
median hourly rate for attorneys practicing as plaintiffs'
counsel in the area of civil litigation in Portland. At that
rate it will take Plaintiff's counsel 82 hours to exceed $24,595.
Defendants assert it is highly likely that Plaintiff's counsel
will expend at least that many hours litigating this matter.

As noted, Plaintiff asserts nine claims in her Complaint,
many of which have unique factual bases. For example, to succeed
on her First Claim for unpaid wages in violation of Oregon
Revised Statutes § 652.120 Plaintiff will have to prove T-Mobile
failed to pay her all of her wages due and owing by her regular
payday. Specifically, Plaintiff alleges T-Mobile failed to pay
her "a promised end-of-year bonus" and did not pay her for work

11 - OPINION AND ORDER

she performed during rest periods.  On the other hand, to succeed

on her Second Claim for sex discrimination in violation of Oregon

Revised Statutes § 659A.030(1)(b) Plaintiff will have to prove

that (1) she is a woman; (2) she performed her job

satisfactorily; (3) she suffered an adverse employment action;

(4) similarly situated individuals outside her protected class

were treated more favorably; and in the event that T-Mobile

provides "a legitimate, nondiscriminatory reason for the alleged

discriminatory action," she must establish "the purported reason

for the action [was] pretextual." *Cilione v. Techfive, LLC*, No.

3:18-CV- 02030-IM, 2020 WL 1932275, at *4 (D. Or. Apr. 21,

2020)(citations omitted).  To succeed on her Third Claim for

discrimination based on her "opposition to an unlawful practice"

in violation of Oregon Revised Statutes § 030(1)(f), Plaintiff

will have to prove an entirely different set of facts; namely,

that she

> (1) engaged in protected activity, such as filing
> a complaint regarding violations of law or
> otherwise opposing an unlawful practice; (2) was
> subjected to an adverse employment action; and
> (3) [her] statutorily protected activity was a
> substantial factor in the employer's adverse
> employment.

*Ewing v. City of Toledo*, No. 6:18-CV-01626-MK, 2020 WL 1845814,

at *11 (D. Or. Feb. 21, 2020), report and recommendation adopted,

No. 6:18-CV-01626-MK, 2020 WL 1821453 (D. Or. Apr. 10, 2020)

(citing *Sereno-Morales v. Cascade Food Inc.*, 819 F. Supp. 2d

12 - OPINION AND ORDER

1148, 1153 (D. Or. 2011); *Portland State Univ. Ch. of Amer. Ass'n of Univ. Profs.*, 352 Or. 697, 712 (2012); and *Medina v. State*, 278 Or. App. 579, 588 (2016)).  To succeed on her Fifth Claim for discrimination based on T-Mobile's failure to act on Plaintiff's "accommodation request" in violation of Oregon Revised Statutes § 659A.109, Plaintiff will have to prove that she requested a reasonable accommodation for a disability; she suffered an adverse employment action; there was "a causal link between the two"; and, and in the event that T-Mobile provides "a legitimate, nondiscriminatory reason for the alleged discriminatory action," she must establish T-Mobile's purported reason for the action was pretextual.  *Coons v. Sec. of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).  *See also Hovhannisyan v. WinCo Holdings, Inc.*, No. 3:18-cv-01900-MO, 2020 WL 2025359, at *5 (D. Or. Apr. 27, 2020)(same).  To succeed on her Eighth Claim for discrimination "because of protected leave" in violation of Oregon Revised Statutes § 659A.277 Plaintiff will have to prove that she took leave as provided in Oregon Revised Statutes § 659A.272;[1] that T-Mobile subjected her to an adverse employment action because she took leave pursuant to § 659A.277; and, in the event that T-Mobile provides a legitimate, nondiscriminatory reason for the alleged discriminatory action, that the purported

---

[1] Oregon Revised Statutes § 659A.272 requires "cover[ed] employer[s]" to permit employees to take "reasonable leave" for a variety of reasons related to domestic violence.

reason for T-Mobile's action was pretextual. *Elk Creek Mgmt. Co. v. Gilbert*, 353 Or. 565, 582 n.14 (2013).  To succeed on her Ninth Claim for discrimination "because of victim status" in violation of Oregon Revised Statutes § 659A.290, Plaintiff will have to prove that (1) she was a victim of "domestic violence, harassment, sexual assault or stalking"; (2) she suffered an adverse employment action; and (3) there exists a causal connection between the adverse employment action and Plaintiff's status as a victim of domestic violence, harassment, sexual assault or stalking. *Gillis v. Wal-Mart Stores Inc.*, No. 03:11-CV-01520-HZ, 2013 WL 1623925, at *14 (D. Or. Apr. 15, 2013).  Thus, the parties will have to conduct discovery and litigation related to several different and nuanced issues ranging from the factual support for Plaintiff's alleged "promised end-of-year bonus" to Plaintiff's request for disability accommodation and request for leave to address issues related to domestic violence.  In this Court's experience discovery and analysis of such a broad range of facts is a time-consuming activity.  In addition, the Court notes at least two of Plaintiff's claims are in areas of the law that are not well-developed.  For example, the Court could find only one case citing Oregon Revised Statutes § 659A.277 and only a handful of cases discussing Oregon Revised Statutes § 659A.290.  Plaintiff's counsel, therefore, is likely to spend more time researching and

evaluating the law relating to these claims than counsel would have to spend researching a well-developed area of the law.

Finally, the complexity and variety of Plaintiff's claims combined with the relative lack of legal guidance as to two of Plaintiff's claims suggests this matter is unlikely to settle in the early stages.

The Court concludes on this record that Defendants have established by a preponderance of the evidence that Plaintiff's counsel is likely to incur at least $24,595 in attorneys' fees in this action; that Defendants have established this matter meets the amount-in-controversy requirement; and, therefore, that this Court has jurisdiction.  Accordingly, the Court **DENIES** Plaintiff's Motion to Remand.


## **MOTION (#5) TO DISMISS OF DEFENDANTS FERNANDEZ AND LAMB**

Defendants Fernandez and Lamb move to dismiss Plaintiff's Fourth Claim against them for aiding and abetting an unlawful employment practice in violation of Oregon Revised Statutes § 659A.030(1)(g) on the ground that Plaintiff fails to state a claim for relief.  Specifically, Fernandez and Lamb assert they were acting as agents of their employer, T-Mobile, and, therefore, pursuant to Oregon law they cannot be liable for aiding and abetting their employer.

I.   **The Law**

15 - OPINION AND ORDER

Oregon Revised Statutes § 659A.030(1)(g) makes it unlawful "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter."

> When an agent with executive authority acts outside his scope of employment, he acts in his personal capacity, not as an agent of the corporation, and is, therefore, a third party to the plaintiff's relationship to the corporation. Under those conditions, the individual could be liable for aiding and abetting the corporation under O.R.S. 659A.030(1)(g).

*Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-CV-02401-HZ, 2017 WL 3725184, at *7 (D. Or. Aug. 29, 2017)(citing *Baker v. Maricle Indus., Inc.*, No. 6:16-CV-01793-AA, 2017 WL 1043282, at *4 (D. Or. Mar. 17, 2017)).  When, however, "an agent with executive authority . . . exercises executive authority, he would not be liable [for] aiding and abetting the corporation, because a person cannot aid and abet himself." *Zweizig*, 2017 WL 3725184, at *7 (citing *Baker*, 2017 WL 1043282, at *4).  *See also Gaither v. John Q. Hammons Hotels Mgmt., LLC*, No. 3:09-cv-00629-MO, 2009 WL 9520797, at *4 (D. Or. Sept. 3, 2009)("[A]lleging . . . liability as a primary actor" raises the concern that a defendant could be held liable for aiding and abetting himself.); *White v. Amedisys Holding, LLC*, No. 3:12-cv-01773-ST, 2012 WL 7037317, at *4 (D. Or. Dec. 18, 2012)(courts treat agents acting with executive authority differently because they act directly on behalf of the corporate employer whereas supervisory managers do

16 - OPINION AND ORDER

not).

"'Normally, whether a party has acted within the scope of employment is a question of fact, albeit an ultimate fact.'" *Zweizig*, 2017 WL 3725184, at *7 (quoting *McGanty v. Staudenraus*, 321 Or. 532, 539 n.3 (1995)).

## II.  Analysis

Defendants Fernandez and Lamb move to dismiss Plaintiff's claim for aiding and abetting on the ground that they were acting within the course and scope of their employment, and, therefore, they cannot be liable for aiding and abetting T-Mobile. Specifically, Plaintiff alleges Fernandez was a Store Manager and Lamb was an Accommodation Manager.  Plaintiff, however, does not allege either Fernandez and/or Lamb acted in their personal capacity or outside of the scope of their employment.  In fact, the only allegation against Fernandez is that she issued a written reprimand to Plaintiff, and the only allegation against Lamb is that she denied Plaintiff's request for accommodation. According to Fernandez and Lamb, both actions are within the scope of their authority and within the scope of their employment.

The issue of a supervisor's liability for aiding and abetting, however, is more complicated than Fernandez and Lamb suggest, and courts in this district have reached various conclusions on the question.  For example, in *Peters v. Betaseed,*

17 - OPINION AND ORDER

*Inc.*, No. 6:11-cv-06308-AA, 2012 WL 5503617 (D. Or. Nov. 9, 2012), the plaintiff alleged his former employer engaged in illegal whistleblower retaliation and that the defendant's corporate president was jointly liable under Oregon Revised Statutes § 659A.030(1)(g) for aiding and abetting because the president made the decision to fire the plaintiff. District Judge Ann Aiken dismissed the president from the case on the ground that the plaintiff failed to explain how the president's standing was as a third party in the relationship between the plaintiff and the corporation. *Id.,* at *7. Judge Aiken explained the president exercised "executive authority . . . within his role as president." *Id.* Judge Aiken also noted the plaintiff did not allege facts that indicated the president acted in his personal capacity, and, therefore, holding the president liable for aiding and abetting "would be to suggest that it is possible to aid and abet oneself." *Id.* By contrast, in *White v. Amedisys Holding, LLC*, Magistrate Judge Janice Stewart concluded the plaintiff "alleged sufficient facts to demonstrate a possibility that [Cindy Brock, the Director of the Facility for the Division,] could be found liable for aiding and abetting the alleged unlawful employment discrimination and retaliation by [the corporate employer defendant] in violation of ORS 659A.030(1)(g)." No. 3:12-CV- 01773-ST, 2012 WL 7037317, at *6 (D. Or. Dec. 18, 2012), report and recommendation adopted,

18 - OPINION AND ORDER

No. 3:12-CV-01773-ST, 2013 WL 489674 (D. Or. Feb. 7, 2013).

Magistrate Judge Stewart explained:

> [I]t must be recognized that any employment
> discrimination and retaliation by Brock against
> [the plaintiff] in the form of unwarranted
> discipline or termination was done not to benefit
> herself, but was done on behalf of and within the
> course and scope of her employment for the
> employer, Amedisys.  A corporate entity, such as
> Amedisys, can be held liable for committing
> unlawful employment practices against its
> employees, such as [the plaintiff], based only on
> the actions of its agents and employees acting on
> its behalf, such as Brock.  The situation is
> different if the employee is legally equivalent to
> the employer, as in a sole proprietorship or
> arguably when exercising "executive authority," as
> in *Peters*.  In that event, the employee would be
> aiding and abetting himself or herself.  But if
> the employee is simply acting on behalf of a
> separate and distinct employing entity, then he or
> she could well aid, abet, compel or coerce that
> employer's unlawful employment practices.  The
> statute's reference to both employers and
> employees, without further qualification, supports
> this broad reading.  This conclusion does open the
> door to claims against a host of employees who, in
> their role as supervisors, take adverse employment
> actions another their subordinates, but such
> claims are not clearly barred by the language in
> ORS 659A.030(1)(g) or by any Oregon case law.

*Id.*, at *5.  In *Zweizig* the court concluded issues of fact in

that case precluded summary judgment on the issue of aiding and

abetting.  Specifically, the court noted

> Defendant was the CEO of NDT.  The question,
> therefore, is whether he wrote the blog in his
> personal capacity or within his role as CEO.
> [Certain language in] the License Agreement [at
> issue] . . . supports the conclusion that
> Defendant acted in his personal capacity, not as
> an agent of NDT, when he wrote the blog entries.
> Therefore, a reasonable jury may conclude as much.

19 - OPINION AND ORDER

> On the other hand, Defendant may be able to show
> that he was acting in his professional capacity as
> CEO of NDT.  Thus, the Court will allow the jury
> to answer this question at trial.

2017 WL 3725184, at *8.

In *Ekeya v. Shiners Hospital for Children, Portland*, 258 F.
Supp. 3d 1192 (D. Or. July 10, 2017), District Judge Michael
Simon denied the defendant's motion to dismiss the plaintiff's
claim for aiding and abetting in violation of § 659A.030(1)(g):

> Neither the Oregon Supreme Court nor the Oregon
> Court of Appeals . . . have yet explicitly
> addressed the question of whether a complaint
> states a claim for aiding and abetting liability
> under [ORS] § 659A.030(l)(g) against a "primary
> actor," or someone with "executive authority,"
> acting for a corporate employer when a complaint
> alleges that a wrongful employment action has been
> taken by that person on behalf of the corporate
> employer.  Similarly, the text of [ORS
> 659A,030(1)(g)] does not unambiguously resolve
> this issue.  Because this legal question has not
> been resolved at the appellate level, it would be
> inappropriate for this court to conclude that it
> is "obvious" that [the plaintiff]'s aiding and
> abetting allegations against [the individual
> defendant] fails to state a claim.

*Id*. at 1203.  Similarly, in *Ransier v. Crestline Construction
Company, LLC,* Magistrate Judge Stacie Beckerman denied the
defendant's motion to dismiss the plaintiff's claim for aiding
and abetting in violation of § 659A.030(1)(g):

> Plaintiff alleges that Kerr served as Crestline's
> general manager and that Kerr was acting "on
> behalf of Crestline" when he terminated Plaintiff.
> It is unclear from the four corners of the
> complaint if Kerr, in his role as general manager,
> was acting as the legal equivalent to Crestline
> (*i.e.,* like a chief executive or sole proprietor)

> when he fired Plaintiff. . . .  While it could be
> that Kerr possessed the unilateral executive
> authority to terminate Plaintiff and no other
> actors were involved in the termination, the
> allegations in the complaint do not allow the
> Court to make that determination at this stage of
> the case.

No. 3:18-CV-00406-SB, 2018 WL 7019315, at *3 (D. Or. Oct. 29,

2018), report and recommendation adopted, No. 3:18-CV-00406-SB,

2019 WL 177926 (D. Or. Jan. 11, 2019).

Here as in *Ekeya* and *Ransier* it is unclear from the

Complaint whether Fernandez and/or Lamb in their roles as Store

Manager and Accommodation Manager were acting "as the legal

equivalent to" T-Mobile when they took the actions alleged in the

Complaint, and Plaintiff does not include any other allegations

in her Complaint that permit the Court to infer that they were

acting as such.  Accordingly, the Court **DENIES** the Motion to

Dismiss of Defendants Fernandez and Lamb as to Plaintiff's Fourth

Claim for aiding and abetting in violation of § 659A.030(1)(g).


<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** Plaintiff's Motion (#7)

to Remand and the Motion (#5) to Dismiss of Defendants Fernandez

and Lamb.

IT IS SO ORDERED.

DATED this 1st day of December, 2020.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge

22 - OPINION AND ORDER